James D. Gilson (5472)
Chris D. Wade (15278)
**DURHAM JONES & PINEGAR, P.C.**
111 S. Main, Suite 2400
Salt Lake City, Utah 84111
Telephone: (801) 415-3000
Facsimile: (801) 415-3500
jgilson@djplaw.com
cwade@djplaw.com
Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

## CENTRAL DIVISION

| | |
|---|---|
| JASON R. ANDERSON, an individual; JACOB ANDERSON, an individual; GORDON LARRY ANDERSON, an individual; BUSINESS FUNDING SOLUTIONS, LLC, a Utah limited liability company; and PROFIT VAULT, LLC, a Utah limited liability company, | **VERIFIED COMPLAINT** <br><br> **(JURY DEMANDED)** <br><br> Case No. 2:20-cv-00041-CMR <br><br> Magistrate Judge: Cecilia M. Romero |
| Plaintiffs, | |
| vs. | |
| DANIEL F. PUTNAM, an individual; ANGEL A. RODRIGUEZ, an individual; R&D GLOBAL, LLC, a Utah limited liability corporation dba BITZOLKIN, EYELINEBTC, BZLOGIN, GMM, and EYELINE BUSINESS DEVELOPMENT; and DOES 1 through 10, | |
| Defendants. | |

SLC_4845045.2

## PARTIES

1.     Plaintiff Jason R. Anderson is, and at all times material hereto has been, an individual residing in Salt Lake County, State of Utah.

2.     Plaintiff Jacob Anderson is, and at all times material hereto has been, an individual residing in Salt Lake County, State of Utah.

3.     Plaintiff Gordon Larry Anderson is, and at all times material hereto has been, an individual residing in Washington County, State of Utah.

4.     Plaintiff Business Funding Solutions, LLC, is, and at all times material hereto has been, a limited liability company organized and existing under the laws of the State of Utah, maintaining its principal place of business in Draper, Utah.

5.     Plaintiff Profit Vault, LLC, is, and at all times material hereto has been, a limited liability company organized and existing under the laws of the State of Utah, maintaining its principal place of business in Heber City, Utah.

6.     On information and belief, Defendant Daniel F. Putnam ("Putnam") is, and at all times material hereto has been, an individual residing in Davis County, State of Utah.

7.     On information and belief, Defendant Angel A. Rodriguez is, and at all times material hereto has been, an individual residing in Utah County, State of Utah.

8.      On information and belief, Defendant R&D Global is a limited liability company organized and existing under the laws of the State of Utah, maintaining its principal place of business in Layton, Utah, and sometimes doing business as Bitzolkin, EyelineBTC, BZLogin, GMM, and Eyeline Business Development. Putnam owns and operate R&D Global.

2

9.      Defendants Does 1 through 10 are individuals or entities whose names and residence addresses are presently unknown but who participated in the wrongful acts alleged in this Complaint. Plaintiffs will move to amend the Complaint when further information is learned about these individuals.

## JURISDICTION AND VENUE

10.      This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 because Plaintiffs' first cause of action arises under section 10(b) of the Securities Exchange Act of 1934, 15 U.SC. § 78j(b), and the rules and regulations promulgated thereunder, including Securities and Exchange Commission Rule 10b-5, 17 C.F.R. § 240.10b-5. This Court has supplemental jurisdiction over the remaining state law claims under 28 U.S.C. § 1367(a) because the state law claims are so related to the federal claims that they form part of the same case or controversy.

11.      This Court has personal jurisdiction over the defendants because the individual defendants are residents of the State of Utah, and because R&D Global is a Utah limited liability company that does business in Utah.

12.      Venue is proper in this Court under 28 U.S.C. § 1391 because the Defendants reside and do business in this district, and a substantial part of the events or omissions giving rise to the claims occurred in this district.

## GENERAL ALLEGATIONS

13.      Plaintiffs Jason R. Anderson ("Jason") and Jacob Anderson ("Jacob") are brothers residing in Salt Lake County, and Plaintiff Gordon Larry Anderson ("Gordon") is their father.

3

14.    In late 2018, Defendant Daniel Putnam ("Putnam") approached Jason and Jacob with a proposal to invest their money with Putnam, who would manage the investments through Putnam's company, R&D Global.

15.    Putnam falsely represented to Jason and Jacob that their investments would have monthly returns of at least 10%, that the funds would be kept in separate, individual accounts, and that the funds would be invested in a cryptocurrency exchange called Bitfinex.

16.    Putnam made these representations knowing they were false or with a reckless disregard for the truth, for the purpose of inducing Jason and Jacob to give him money.

17.    Based on Putnam's representations and promises, Jason and Jacob entered into an agreement with Putnam and R&D Global in which Jason and Jacob would invest funds with Putnam and R&D Global, and Putnam and R&D Global would manage the investments in accordance the foregoing terms.

18.    Jason and Jacob invested more than $3.3 million with Putnam and R&D Global (dba several other entities, including Bitzolkin, EyelineBTC, Bzlogin, GMM, and Eyeline Business Development) over the course of late 2018 and 2019.

19.    Payments were made to R&D Global (dba the entities named above), through Putnam.

20.    Putnam was assisted in all material respects by Angel Rodriguez.

21.    Rodriguez traveled often to Columbia to meet with Jean Paul Ramirez Rico ("Jean Paul").

22.    Jean Paul is the CEO of Eyeline S.A.S., and Defendants represented that Jean Paul was also involved in investing Plaintiffs' funds.

4

23.     Upon information and belief, Putnam and Rodriguez worked in concert to defraud Defendants, and each of them knowingly used Plaintiffs' investment funds for their own purposes.

24.     Initially, Jason and Jacob's investment appeared to be providing a strong return based on their online account statements.

25.     In reliance on the promises made by Defendants to his sons Jason and Jacob, Gordon Anderson began investing funds with Putnam in 2019.  Gordon invested over $4 million through his company Profit Vault, LLC.

26.     In or around September of 2019, Plaintiffs' online accounts with Defendants stopped showing any profits.

27.     Plaintiffs were prohibited from withdrawing any investment funds, and lacked access to monitor the true status and location of their investments.

28.     Plaintiffs Jason and Jacob repeatedly sought information about the status of their accounts from Putnam, but he avoided them and refused to return their calls.

29.     In or around October of 2019, Plaintiffs were finally told by Putnam that Bitfinex had put a hold on their investment funds.

30.     However, upon information and belief, the hold was put on the investment funds much earlier, around May 2019.

31.     Despite knowing that Plaintiffs' investment funds were put on hold by Bitfinex, upon information and belief, Defendants' online portal continued to show that Plaintiffs' investment was performing strongly and that there was no hold on the funds.

SLC_4845045.2

32.     After many additional efforts to contact Defendants to find out the true status of Plaintiffs' investments, Plaintiffs have now been told by Putnam that instead of keeping investment funds in separate, individual accounts, Defendants combined Plaintiffs' investment funds with funds of other investors and company entities into one large, undifferentiated account.

33.     Plaintiffs have requested records to determine the status and location of their investment funds, but Defendants have refused to provide such information.

34.     On December 18, 2019, Jason and Jacob, through counsel, sent a demand letter to Defendants, requesting, among other things, a full accounting of their investment funds, seeking confirmation that their investment funds are currently held by Bitfinex, and demanding the return of their investments.

35.     Defendants have failed to respond to Plaintiffs' demand letter.

36.     Upon information and belief, Putnam, R&D Global, and Rodriguez misappropriated and mismanaged Plaintiffs' investment funds by, among other things, using the funds for wrongful and illegal purposes, failing to property track and account for the funds, and diverting the funds for their own use or for the use of others besides Plaintiffs.

37.     Putnam sought to expand the number of investors in the scheme by incentivizing referrals.

38.     Upon information and belief, Defendants operated their investment business like a Ponzi scheme, using new investment funds to pay other investors until they ran out of money.

39.     Defendant made many material misstatements to Plaintiffs, including but not limited to the following:

a.      claiming that Plaintiffs' investments would be held in separate, individual accounts and not grouped together;

b.      claiming to be a broker or have access to a broker with proper certifications;

c.      claiming that Plaintiffs' funds were being invested in accounts with Bitfinex;

d.      claiming that Plaintiffs' funds would be safe and secure; and

e.      claiming that Plaintiffs' investments would appreciate by at least 10% per month.

40.     Among the material omissions are the following:

a.      omitting to tell Plaintiffs that Defendants were using Plaintiffs' funds for various illegal uses, such as paying off other investors and paying themselves;

b.      omitting to give Plaintiffs access to monitor their funds;

c.      omitting to tell Plaintiffs in a timely manner that their investment funds were frozen;

d.      omitting to keep Plaintiffs informed about the true status of their investment funds; and

e.       omitting to inform Plaintiffs as to the true risks and dangers of their investment.

f.      omitting to disclose Defendants' lack of experience, credentials, licenses, know-how, and capability to deliver returns on the investment as promised;

SLC_4845045.2

g.      omitting to disclose that Defendants ignored protocols and standards in the

industry to further Defendants' own financial interests.

41.     Had Defendants been honest, Plaintiffs would not have invested more than $7.3

million with Defendants.

42.     Defendants have wrongfully taken Plaintiffs' investment funds, for Defendants'

personal gain and benefit.

43.     Defendants have sustained and will yet sustain significant damages from

Defendants' actions.

***Alter Ego Allegations***

44.     In performing each of the foregoing acts and omissions, each Defendant either

acted as the agent of the other Defendants or all the Defendants ratified such acts, or both.

45.     Each Defendant acted with an awareness of their wrongdoing and realized that

their conduct would substantially assist in the accomplishment of Defendants' wrongful conduct.

46.     Plaintiffs believe and are informed, and thereby allege on information and belief,

that R&D Global, Rodriguez, and Putnam are the agents, servants, employees, licensees,

guarantors, invitees or assignees of each other, and in doing the actions or inactions alleged acted

within the course and scope of their relationships with each other with the full knowledge and

consent of each other.

47.     Plaintiffs believe and allege that R&D Global, and Putnam and Rodriguez, are

and were the alter egos of each other.  Plaintiffs believe and allege that Putnam and Rodriguez

exercised control and dominion over R&D Global, with a disregard for the separate legal status

8

of the entity to defraud Plaintiffs and to avoid accountability for managing Plaintiffs'
investments.

48.     R&D Global was not adequately capitalized.

49.     Putnam, Rodriguez, and R&D Global commingled Plaintiffs' funds with personal
and other funds, and Putnam, Rodriguez, and R&D Global otherwise wrongfully acted to
Plaintiffs' detriment.

50.     Plaintiffs allege that adherence to the fiction of R&D Global as a separate entity
distinct from Putnam and Rodriguez would permit an abuse of the corporate privilege and would
sanction fraud and promote injustice.

**FIRST CLAIM FOR RELIEF**
**(Securities Fraud in Violation of Section 10(b) of the Securities Exchange Act**
**and Rule 10b-5 - Against All Defendants)**

50.     Plaintiffs reallege and incorporate the allegations contained in the foregoing
paragraphs as though set forth in their entirety herein.

51.     The investment scheme at issue involved the offer and sale of securities by
Defendants.

52.     In connection with the sale of securities to Defendants or the purchase a securities
by Plaintiffs, Defendants violated Section 10(b) of the Securities Exchange Act and Rule 10b-5
by: (a) employing a device, scheme, or artifice to defraud; (b) making untrue statements of
material fact and omitting to state material facts necessary in order to make the statements made,
in light of the circumstances under which they were made, not misleading; and (c) engaging in
acts, practices and courses of business which operated as a fraud or deceit upon Plaintiffs, as all
alleged in the preceding paragraphs of this Complaint.

9

53.     The misrepresentations or omissions of material facts or scheme to defraud were furthered by use, means, or instrumentalities of interstate commerce, including telephone, the mail, and the Internet, by Defendants.

54.     At the time of the misrepresentations and omissions, Plaintiffs were ignorant of their falsity and reasonably believed them to be true.

55.     Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them.

56.     The misrepresentations or omissions of material facts or scheme to defraud by Defendants were made with the intent to deceive, manipulate, or defraud Plaintiffs.

57.     By virtue of the foregoing, Defendants have violated Section 10(b) of the Securities Exchange Act and Rule 10b-5 promulgated thereunder, and are liable to Plaintiffs for so doing.

58.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs suffered damages in connection with their purchase of securities in an amount to be proven at trial, but which is reasonably expected to exceed $7.3 million, plus interest, costs, and attorneys' fees.

**SECOND CLAIM FOR RELIEF**
**(Securities Fraud in Violation of Utah Uniform Securities Act, Utah Code Annotated § 61-1-1 and -22 - Against All Defendants)**

59.     Plaintiffs reallege and incorporate the allegations contained in the foregoing paragraphs as though set forth in their entirety herein.

SLC_4845045.2

60.     In connection with the sale of securities to or the purchase of securities by Plaintiffs, Defendants violated Utah Code § 61-1-1 and -22 by directly or indirectly: (a) employing a device, scheme, or artifice to defraud; (b) making untrue statements of material fact and omitting to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices and courses of business which operated as a fraud or deceit upon Plaintiffs, as all alleged in the preceding paragraphs of this Complaint.

61.     At the time of Defendants' misrepresentations, Plaintiffs were ignorant of their falsity and reasonably believed them to be true.

62.     At the time of Defendants' omissions, Plaintiffs did not know Defendants omitted material facts necessary to make the statements made not misleading.

63.     Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them.

64.     Defendants made the misrepresentations and omitted to disclose the material facts set forth herein for the purpose of inducing Plaintiffs to make the investment described herein.

65.     By virtue of the foregoing, Defendants recklessly and intentionally violated the Utah Uniform Securities Act, Utah Code § 61-1-1 and -22, and are liable to Plaintiffs for so doing.

66.     As a direct and proximate result of Defendants' violations of the Utah Uniform Securities Act, Plaintiffs have been damaged in an amount to be established at trial, which is

11

reasonably expected to exceed $7.3 million plus interest, and, pursuant to Utah Code § 61-1-22, is properly trebled, plus Plaintiffs' costs and attorneys' fees.

### THIRD CLAIM FOR RELIEF
**(Sales by Unlicensed Broker Dealers in Violation of Utah Uniform Securities Act, Utah Code Annotated § 61-1-3 - Against All Defendants)**

67.     Plaintiffs reallege and incorporate the allegations contained in the foregoing paragraphs as though set forth in their entirety herein.

68.     In connection with the sale of securities to or the purchase of securities by Plaintiffs, Defendants violated Utah Code Annotated § 61-1-3 by acting as a broker dealer or agent of a broker dealer without being licensed.

69.     By virtue of the foregoing, defendants recklessly and intentionally violated the Utah Uniform Securities Act, Utah Code Annotated § 61-1-3.

70.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs suffered damages in connection with their purchase of the security in an amount to be proven at trial, but which is reasonably expected to exceed $7.3 million plus interest, plus interest, and, pursuant to Utah Code § 61-1-22, is properly trebled, plus interest thereon, plus Plaintiffs' costs and attorneys' fees.

### FOURTH CLAIM FOR RELIEF
**(Sales by Unregistered Securities in Violation of Utah Uniform Securities Act, Utah Code Annotated § 61-1-7 - Against All Defendants)**

71.     Plaintiffs reallege and incorporate the allegations contained in the foregoing paragraphs as though set forth in their entirety herein.

72.     In connection with the sale of securities to or the purchase of securities by

Plaintiffs, Defendants violated Utah Code Annotated § 61-1-7 by selling securities which were

not registered, exempt from registration, or the subject of notice filing under law.

73.     By virtue of the foregoing, defendants recklessly and intentionally violated the

Utah Uniform Securities Act, Utah Code Annotated § 61-1-7.

74.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs have

been damages and continue to be damaged in an amount to be proven at trial, but which is

reasonably expected to exceed $7.3 million plus interest, and, pursuant to Utah Code Annotated

§ 61-1-22, is properly trebled, plus interest thereon, plus Plaintiffs' costs and attorneys' fees.

**FIFTH CLAIM FOR RELIEF**
**(Fraud/Intentional Misrepresentation - Against All Defendants)**

75.     Plaintiffs reallege and incorporate the allegations contained in the foregoing

paragraphs as though set forth in their entirety herein.

76.     Defendants in this case committed numerous acts of fraud.

77.     Among the material misstatements made by Defendants are the following:

a.     claiming that Plaintiffs' investments would be held in separate, individual

accounts and not grouped together;

b.     claiming to be a broker or have access to a broker with proper

certifications;

c.     claiming that Plaintiffs' funds were being invested in accounts with

Bitfinex; and

d.     claiming that Plaintiffs' funds would be safe and secure.

78.     Among the material omissions are the following:

13

a.    omitting to tell Plaintiffs that Defendants were using Plaintiffs' funds for various illegal uses, such as paying off other investors and paying themselves more than agreed upon;

b.    omitting to give Plaintiffs access to monitor their funds;

c.    omitting to tell Plaintiffs in a timely manner that their investment funds were frozen;

d.    omitting to keep Plaintiffs informed about the true status of their investment funds; and

e.    omitting to inform Plaintiffs as to the true risks and dangers of their investment.

f.    omitting to disclose Defendants' lack of experience, credentials, know-how, and capability to deliver returns on the investment as promised;

g.    omitting to disclose that Defendants ignored protocols and standards in the industry to further Defendants' own financial interests;

79.    Defendants' statements and omissions were false or misleading and Defendants knew at the time that they were false and misleading.

80.    Plaintiffs reasonably relied on these misstatements and omissions to their detriment, and to make their decisions to invest with Defendants.

81.    As a direct and proximate result of Defendants' misstatements and omissions, Plaintiffs have been damaged in an amount to be proven at trial, but which is reasonably expected to exceed $7.3 million plus interest.

14

82.     Defendants' conduct was willful, intentional, or was done with a reckless disregard of Plaintiffs' rights, and Defendants are therefore also liable to Plaintiffs for punitive damages to punish and deter Defendants from such conduct, in an amount to be determined at trial.

## SIXTH CLAIM FOR RELIEF
### (Conversion - Against All Defendants)

83.     Plaintiffs reallege and incorporate the allegations contained in the foregoing paragraphs as though set forth in their entirety herein.

84.     Defendants held Plaintiffs' funds in trust. In violation of that trust, Defendants converted Plaintiffs' funds to their own benefit and self-enrichment, or for other purposes not authorized by Plaintiffs.

85.     As a result of such conversion, Plaintiffs have been damaged in an amount to be proven at trial, but which is reasonably expected to exceed $7.3 million plus interest.

86.     Defendants' conduct was willful, intentional, or was done with a reckless disregard of Plaintiffs' rights, and Defendants are therefore also liable to Plaintiffs for punitive damages to punish and deter Defendants from such conduct, in an amount to be determined at trial.

## SEVENTH CLAIM FOR RELIEF
### (Breach of Fiduciary Duty - Against All Defendants)

87.     Plaintiffs reallege and incorporate the allegations contained in the foregoing paragraphs as though set forth in their entirety herein.

88.     Defendants owed fiduciary duties to Plaintiffs, given the position of trust granted to them by Plaintiffs to manage Plaintiffs' investments.

SLC_4845045.2

89.    As a result, Defendants had a duty of utmost care to appropriately protect Plaintiffs' investment, and had a duty of loyalty not to engage in self-dealing, and to not engage in the wrongful conduct as alleged in this Complaint.

90.    In breach of their fiduciary duties, Defendants failed to protect Plaintiffs' interests by, among other things, misrepresenting material facts to Plaintiffs, omitting to tell Plaintiffs critical facts that would have allowed them to preserve and protect their investment, failing to keep investment funds in separate accounts, and omitting to tell Plaintiffs the true status and location of their investment funds.

91.    As a result of these breaches of fiduciary duties, Plaintiffs have been damaged in an amount to be proven at trial, but which is reasonably expected to exceed $7.3 million plus interest.

92.    Defendants' conduct was willful, intentional, or was done with a reckless disregard of Plaintiffs' rights, and Defendants are therefore also liable to Plaintiffs for punitive damages to punish and deter Defendants from such conduct, in an amount to be determined at trial.

### EIGHTH CLAIM FOR RELIEF
### (Negligence - Against All Defendants)

93.    Plaintiffs reallege and incorporate the allegations contained in the foregoing paragraphs as though set forth in their entirety herein.

94.    Each of the Defendants owed a duty of care to Plaintiffs. Each of them had specific responsibilities regarding the investment of Plaintiffs' funds, reporting of information, management of accounts and funds, and otherwise protecting Plaintiffs' investment.

95.    The Defendants breached their duties as set forth in this Complaint.

16

SLC_4845045.2

96.     As a result of Defendants' breaches of duty, Plaintiffs have been damaged in an amount to be proven at trial, but which is reasonably expected to exceed $7.3 million plus interest.

**NINTH CLAIM FOR RELIEF**
**(Breach of Contract - Against All Defendants)**

97.     Plaintiffs reallege and incorporate the allegations contained in the foregoing paragraphs as though set forth in their entirety herein.

98.     Defendants and Plaintiffs entered into an agreement as described herein, wherein Defendants promised the Plaintiffs that their invested funds would be kept separate from other investors, that they could access and liquidate their investments at any time, and that they would be safe and secure and would provide a substantial return.

99.     Plaintiffs performed all the terms and conditions of the agreement.

100.    The Defendants breached their duties as set forth in this Complaint, by, among other things, failing to manage and protect Plaintiffs' investment, failing to segregate and return investment funds.

101.    As a result of Defendants' breaches of duty, Plaintiffs have been damaged in an amount to be proven at trial, but which is reasonably expected to exceed $7.3 million plus interest.

**TENTH CLAIM FOR RELIEF**
**(Unjust Enrichment - Against All Defendants)**

102.    Plaintiffs reallege and incorporate the allegations contained in the foregoing paragraphs as though set forth in their entirety herein.

103.    Plaintiffs conferred a benefit upon Defendants.

17

104.   Defendants knew of and appreciated the benefit conferred upon them by Plaintiffs.

105.   Defendants accepted and retained the benefit under circumstances which make it inequitable for them to retain the benefit without payment of its value.

106.   As a result of Defendants' unjust enrichment, Plaintiffs have been damaged in an amount to be proven at trial, but which is reasonably expected to exceed $7.3 million plus interest.

**ELEVENTH CLAIM FOR RELIEF**
**(Accounting - Against All Defendants)**

107.   Plaintiffs reallege and incorporate the allegations contained in the foregoing paragraphs as though set forth in their entirety herein.

108.   As investors, Plaintiffs are entitled to an accounting of what Defendants did with Plaintiffs' funds.

109.   Consequently, Plaintiffs seek an order compelling all Defendants to provide a full accounting to Plaintiffs as to the disposition of Plaintiffs' funds, including copies of all source documents relating to that accounting.

**TWELFTH CLAIM FOR RELIEF**
**(Civil Conspiracy - Against All Defendants)**

110.   Plaintiffs reallege and incorporate the allegations contained in the foregoing paragraphs as though set forth in their entirety herein.

111.   Upon information and belief, Defendants combined together, agreed, and had a meeting of the minds to formulate an engage in the scheme to defraud Plaintiffs as described herein.

18

112.     By and through Defendants' scheme to defraud Plaintiffs, Defendants intended to induce Plaintiffs to invest substantial funds with Defendants, knowing that Defendants intended to divert Plaintiffs funds to their own use and not invest them as represented.

113.     By and through Defendants' scheme, Defendants intended to receive and retain funds invested by Plaintiffs and divert them to their own use.

114.     Defendants' conduct constitute unlawful, overt acts intended to defraud Plaintiffs.

115.     Plaintiffs have been damaged as a result of Defendants' conduct in an amount to be determined at trial, which is reasonably expected to exceed $7.3 million plus interest.

116.     Defendants' conduct was willful, intentional, or was done with a reckless disregard of Plaintiffs' rights, and Defendants are therefore also liable to Plaintiffs for punitive damages to punish and deter Defendants from such conduct, in an amount to be determined at trial.

**THIRTEENTH CLAIM FOR RELIEF**
**(Fraudulent Transfer - Against All Defendants)**

117.     Plaintiffs reallege and incorporate the allegations contained in the foregoing paragraphs as though set forth in their entirety herein.

118.     Defendants improperly transferred and diverted Plaintiffs' investment funds out of Plaintiffs' investment accounts and used the funds to pay other creditors and otherwise diverted them to Defendants' own use, and did so with the actual intent to hinder, delay, or defraud Plaintiffs.

119.     The transfers were made without a reasonably equivalent value in exchange.

SLC_4845045.2

120.     Upon information and belief, R&D Global is insolvent as a result of the transfers, and at the time of the transfers, Defendants had reasonable cause to believe that R&D Global was insolvent.

121.     The transfers were made to insiders of Defendants.

122.     At the time of the transfers, Defendants were aware of R&D Global's obligations to Plaintiffs.

123.     Pursuant to the Utah Uniform Fraudulent Transfer Act (Utah Code § 25-6-1 *et seq*.), the transfers are fraudulent.

124.     Plaintiffs are entitled to the remedies available under the common law and the Utah Uniform Fraudulent Transfer Act, including but not limited to orders and Judgments against the Defendants as follows: an order avoiding the transfers; attachment against the funds involved in the transfers and against any subsequent distribution or conversion of funds to other forms of property; an injunction against further disposition of the funds involved in the transfers; the appointment of a receiver to take charge of the funds involved in the transfers; and such other relief as the circumstances require.

125.     Defendants' conduct was willful, intentional, or was done with a reckless disregard of Plaintiffs' rights, and Defendants are therefore also liable to Plaintiffs for punitive damages to punish and deter Defendants from such conduct, in an amount to be determined at trial.

## **JURY DEMAND**

Plaintiffs demand a jury trial on all issues so triable.

20

SLC_4845045.2

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly and severally, as follows:

A.	Actual and consequential damages in an amount to be proven at trial, but in an amount not less than $7.3 million plus interest;

B.	Pre and post judgment interest, costs, attorney fees, and any other relief available to Plaintiffs at law or in equity;

C.	Treble damages and punitive damages in an amount to be determined at trial;

D.	For an injunction to be entered that, among other things, compels Defendants to return all of Plaintiffs' funds back to Plaintiffs and that prohibits Defendants from spending, transferring, secreting, or depositing of Plaintiffs' funds paid to Defendants; and

E.	Such other relief as the court deems appropriate under the circumstances.


DATED this 21st day of January, 2020.

By: /s/ *James D. Gilson*
James D. Gilson
Chris D. Wade
**DURHAM JONES & PINEGAR**
111 S. Main, Suite 2400
Salt Lake City, Utah 84111
*Attorneys for Plaintiffs*

21

**VERIFICATION**
Jason R. Anderson

STATE OF UTAH            )
                                        : ss.
COUNTY OF SALT LAKE  )

I, Jason R. Anderson, being duly sworn, state (1) that I am authorized to make this Verification on behalf of myself and Business Funding Solutions, LLC; (2) that I am familiar with the business and records of Business Funding Solutions, LLC; (3) that I have personal knowledge of the facts set forth in the foregoing Verified Complaint; and (4) that the facts set forth in the foregoing Verified Complaint are true to the best of my knowledge, information and belief.

DATED this 18 day of January, 2020.

Jason R. Anderson

SUBSCRIBED AND SWORN to before me this 18 day of January, 2020.

TAYLOR ANN HARVEY
NOTARY PUBLIC -STATE OF UTAH
My Comm. Exp 05/16/2022
Commission # 700472

Notary Signature and Seal

22

SLC_4845045.2